The Honorable Barbara Horn, Co-Chair The Honorable Jim Lendall, Co-Chair Review Committee Arkansas Legislative Counsel State Capitol, Room 315 Little Rock, AR 72201
Dear Senator Horn and Representative Lendall:
I am writing in response to your request for my opinion on the following questions:
 1. Does ACA 12-50-106(d) authorize the Department of Correction [the "DOC"], acting alone, to enter into contracts for medical services for periods of up to 20 years, or is the authorization for extended year contracts under that Code section limited to cooperative ventures of the sort contemplated by the Corrections Cooperative Endeavors and Private Management Act [the Act"] codified at ACA 12-50-101 et seq.?
 2. If ACA 12-50-106(d) does authorize the DOC, acting alone, to enter into contracts for medical services for periods up to 20 years, would the contracts be regulated under the Arkansas Procurement Law, ACA 19-11-201 et seq., or any other law regulating state contracts for matter other than the length of the contract?
 3. If ACA 12-50-106(d) does not authorize the DOC, acting alone, to enter into contracts for medical services for periods up to 20 years, would the contracts violate ACA 19-11-238(a), which limits state agency contracts to 7 years, or any other law limiting the length of state agency contracts?
These questions reportedly relate to a proposed contract for medical services reciting a term up to ten years that DOC is currently considering. At issue is whether this term would exceed a seven-year statutory maximum.
RESPONSE
With respect to your first question, I do not believe that the Act, including the twenty-year term limitation, applies to the proposed contract for medical services. Your second question is consequently moot. With respect to your third question, I believe the proposed contract would violate the permissible-term restriction set forth at A.C.A. § 19-11-238(a). Moreover, unless it contained an enforceable contingency clause voiding the contract in the event the legislature failed to make a biennial appropriation, I believe it would offend the provisions of Ark. Const. art. 5, § 29.
Question 1: Does ACA 12-50-106(d) authorize the Department of Correction[the "DOC"], acting alone, to enter into contracts for medical servicesfor periods of up to 20 years, or is the authorization for extended yearcontracts under that Code section limited to cooperative ventures of thesort contemplated by the Corrections Cooperative Endeavors and PrivateManagement Act [the "Act"] codified at ACA 12-50-101 et seq.?
In my opinion, the Act does not apply to a contract of the sort at issue in your request. As the court noted in Gravett v. Villines,314 Ark. 320, 325, 862 S.W.2d 260 (1993), one primary purpose of the act is to authorize political subdivisions to "establish private prison facilities" — an end consistent with the Act's popular name. This conclusion is consistent with the legislature's statement of purpose in A.C.A. §12-50-102:
 The General Assembly finds that adequate and modern prison facilities are essential to the safety and welfare of the people of this state.
 It is legislatively determined that adequate and modern prison facilities need to be made available and that a feasible and economic way of financing, constructing, acquiring, and operating prison facilities is by authorizing cooperative endeavors and private management under the authority of this chapter.
In order to realize this end, A.C.A. § 12-50-106(a) provides:
 The department, any regional corrections commission, and any political subdivision are authorized to enter into contracts with each other and with prison contractors for the financing, acquiring, constructing, and operating of facilities.
Subsection 12-50-103(3) of the Code defines the term "correctional services" as follows:
 "Correctional services" means the following functions, services, and activities when provided within a prison or otherwise:
 (A) The operation of facilities, including management, custody of inmates, and providing security;
 (B) Food services, commissary, medical services, transportation, sanitation, or other ancillary services;
 (C) Development and implementation assistance for classification, management, information systems, or other information system or services;
(D) Education, training, and jobs program; and
 (E) Counseling, special treatment programs, or other programs for special needs.
(Emphasis added.) Subsection 12-50-110(1) defines the "prison contractor" or "contractor" as follows:
 "Prison contractor" or "contractor" means any entity entering a contractual agreement to provide any correctional services to inmates under the custody of the state or a political subdivision, public facilities board, or redevelopment district.
The DOC is reportedly reading the above statutes to mean that the provision of even one of the recited "correctional services" by a private individual or entity will trigger application of the Act, including A.C.A. § 12-50-106(d), which provides:
 Contracts awarded under the provisions of this section, including contracts for the provision of correctional services or for the lease or use of public lands or buildings for use in the operation of state or local facilities, may be entered into for a period of up to twenty (20) years, subject to the requirement for annual appropriation of funds by each political subdivision and subject to the requirement of biennial appropriations by the state.
Although the statutory language would benefit from legislative clarification, I do not believe the Act will bear the DOC's interpretation. Subsection 12-50-106(c)(2) provides, for instance, that a contractor must demonstrate its ability to "to provide indemnification for liability arising from large prison management projects." Subsection12-50-103(11) further defines a "private correctional facility" as "any prison, facility, or prison facility in which correctional services for inmates are provided by a prison contractor or contractor." In my opinion, these statutes suggest that the legislature intended the Act to apply only to a contract in which the performance of "correctional services" is of a scale that essentially renders the institution a "private correctional facility." Accordingly, I do not believe the twenty-year term limit authorized at A.C.A. § 12-50-106(d) would apply to the proposed contract you have described in your request.
Question 2: If ACA 12-50-106(d) does authorize the DOC, acting alone, toenter into contracts for medical services for periods up to 20 years,would the contracts be regulated under the Arkansas Procurement Law, ACA19-11-201 et seq., or any other law regulating state contracts for matterother than the length of the contract?
This question is moot in light of my response to your previous question.
Question 3: If ACA 12-50-106(d) does not authorize the DOC, actingalone, to enter into contracts for medical services for periods up to 20years, would the contracts violate ACA 19-11-238(a), which limits stateagency contracts to 7 years, or any other law limiting the length ofstate agency contracts?
In my opinion, the answer to this question is "yes." To the extent the DOC is empowered to contract for the private provision of medical services, which I believe it is, it is not pursuant to the Act, but rather to A.C.A. § 12-27-103(14), which provides:
 The department may cooperate with and contract with the federal government, with governmental agencies of Arkansas and other states, with political subdivisions of Arkansas, and with private contractors to provide and improve correctional operations.
With respect to the term of such contracts, A.C.A. § 19-11-238(a) provides:
 Unless otherwise provided by law, a contract for commodities or services may be entered into for periods of not more than seven (7) years if funds for the first fiscal year of the contemplated contract are available at the time of contracting. Payment and performance obligations for succeeding fiscal years shall be subject to the availability and appropriation of funds therefor.
In my opinion, this statute would render the proposed ten-year contract illegal. Moreover, as acknowledged in the final sentence of the statute just quoted, even if the recited term were only seven years, the contract would need to be subject to the condition of biennial appropriations in order to comply with Ark. Const. art. 5, § 29, which bars appropriations for any period exceeding two years. See the attached Ark. Op. Att'y Gen. No. 2001-300 (discussing the potentially complicating effect of this provision upon a proposed contract whereby an Arkansas county would lease a jail facility from a private contractor and contract with the DOC to house a guaranteed minimum number of DOC inmates).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh